UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAYMOND GAINES,<br><br>Defendant | No. 21-cr-10348-FDS |

### GOVERNMENT'S SENTENCING MEMORANDUM

A 117-month sentence in this matter would communicate a clear message to the defendant, that society has laws that he simply must follow. The defendant, RAYMOND GAINES, obviously did not get this message from the previous federal sentence imposed in 2018, nor did he get it from his repeated violations, and eventual re-incarceration, with his conditions of supervised release. The defendant has shown that he is not merely an individual possessing a loaded handgun. He is not merely a drug dealer. He is not merely a gang member. He is not merely willingly disregarding the terms of his supervised release. Instead, the defendant is each and every one of these things.

For these reasons, along with the defendant's criminal history, the circumstances here justify the government's recommendation of 117 months of incarceration, to run consecutive from the completion of his current 15 months of incarceration on his supervised release violation, followed by 3 years of supervised release. This recommendation, at the low end of the guidelines, reflects the seriousness of the offense, and is sufficient but no greater than necessary to accomplish the goals of sentencing. The government also seeks a term of supervised release with certain conditions including a restriction aimed at preventing the defendant from re-uniting with Orchard Park gang associates upon release from prison and returning to drugs, guns, and other related crimes.

I.  THE ADVISORY SENTENCING GUIDELINES

On January 25, 2022, the defendant pled guilty to the Information, which charged him with three offenses: being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A). The defendant's expedited sentencing hearing is scheduled for February 10, 2022. There is a plea agreement in this case. *See* Plea Agreement, Doc. No. 34.

The defendant is responsible for distributing, and possessing with intent to distribute, approximately 181 grams of cocaine base and 173 grams of powder cocaine. *See* Plea Agreement at 2. The guideline calculations are, however, controlled by the firearms the defendant possessed in this case. The minimum term of imprisonment on Count Three, for possessing the Ruger .380 LCP semiautomatic pistol in furtherance of drug trafficking, is 60 months, to be served from and after the term of imprisonment imposed on any other count. *See* Abbreviated Presentence Report at 3;[1] *see also* Plea Agreement at 2-3. Furthermore, Count One and Count Two form a single group, and the defendant's prohibited possession of the Glock Model 29 semiautomatic pistol and ammunition is a base offense level of 20. *See* 2022 PSR at 3; *see also* Plea Agreement at 2. The defendant is entitled to a three-level acceptance of responsibility reduction. *See* 2022 PSR at 4; *see also* Plea Agreement at 3.

The government objects to a portion of U.S. Probation's calculation of the guidelines, which omits two significant increases in the defendant's base offense level. These are enhancements specifically contemplated by USSG § 2K2.4, and necessary in this case to

---

[1] References to the Abbreviated Presentence Report ("2022 PSR") are by page number.

properly reflect the defendant's conduct. Both the Abbreviated Presentence Report and Plea Agreement in this case point out that Count Three (in violation of § 924(c)) cannot be grouped with any other counts. *See* USSG § 2K2.4 [2]; *see also* 2022 PSR at 3; *see also* Plea Agreement at 2. Here, while on federal supervised release, the defendant has pled guilty to possessing two different firearms in two separate places, a loaded Glock Model 29 semiautomatic pistol on his person, in violation of 18 U.S.C. § 922(g)(1), and a Ruger .380 LCP semiautomatic pistol in his residence, and in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A).

Therefore, the calculation in the plea agreement correctly includes that the defendant is responsible for possessing a firearm in connection with another felony offense, which increases the base offense level by 4, and for possessing a stolen firearm, which increases the base offense level by 2. *Id*. The defendant's Total Offense Level is 23. *See* Plea Agreement at 2.

The defendant has a criminal record that results in a criminal history score of 5, and as a result he is in criminal history category III. *See* 2022 PSR at 4. The entirety of his scoreable criminal history comes from his prior federal case. *See United States v. Raymond Gaines*, Docket 17-cr-10177-ADB. As stated above, at the time of this investigation, the defendant was on federal supervised release as a result of his arrest and conviction in the United States District Court – District of Massachusetts, for distribution of cocaine base within 1,000 feet of a school. In that case the defendant was sentenced to 1 year and 1 day imprisonment, followed by 6 years

---

[2] This case and its weapon enhancements are contemplated in the Application Notes under USSG § 2K2.4, which points out the similarities in an example where the defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. § 924(c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. § 924(c) conviction. *See* USSG § 2K2.4, at Application Note 4.

of supervised release. Following his release from BOP custody, the defendant has twice been found in violation of his supervised release, including as a result of the instant offense.[3] With a criminal history score of III, the advisory guideline sentencing range on the group of Count One and Count Two is 57 – 71 months, in addition to the 60 months to be served on Count Three from and after the term imposed on the other counts.

## II.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The factors set forth in 18 U.S.C. § 3553(a) assist the Court in determining a sentence that is sufficient, but not great than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence for criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available, and the GSR.

Consideration of the § 3553(a) factors demonstrates that a sentence of 117 months, at the low end of the Guidelines Sentencing Range, followed by 3 years of supervised release, is the appropriate sentence in this case.

---

[3] The defendant was found in violation on January 14, 2021, and he was not incarcerated, but his conditions of supervised release were modified at that time. Due to part to this incident, he was again found in violation on July 27, 2021, and was sentenced to an additional 15 months of incarceration, in addition to his original sentence of 1 year and 1 day, with no supervised release to follow. *See* Docket 17-cr-10177-ADB.

### a. **Nature of the Offense**

The nature and circumstances of the defendant's drug trafficking, and possession of dangerous firearms and ammunition, justify a significant sentence of 117 months. In analyzing defendant's conduct and eventual arrest, the Court should first consider the brazen nature of the defendant's drug trafficking, while on federal supervised release for this same conduct. As is indicated in the government's statement of offense conduct, the defendant made repeated controlled purchases an undercover police officer ("UC"), including three crack cocaine sales in the vicinity of the South Shore Plaza, during April and May of 2021. Each of these sales was captured on video. Each also demonstrates the seriousness of the defendant's offenses based on the speed with which they were accomplished, the defendant's readiness to sell more, and his desire to further his drug trafficking business. During the final controlled purchase, the defendant told the UC that he "needed someone to cook his crack (cocaine)" and also quoted the price to the UC for two ounces of crack cocaine at $3400.

The government recognizes that this Court is certainly entitled to consider the calculus when addressing the powder-to-crack issues with cocaine being discussed by Congress, however it remains critical not to lose sight of the devastating effects cocaine use has on users and communities where dealers like the defendant are selling drugs for profit. Between 2012 and 2018, the number of deaths from drug poisoning involving cocaine increased every year, and 2018 was the third year in a row that such deaths exceeded 10,000.[4] The defendant's actions have been a contributing factor in the ongoing drug crisis in Massachusetts, consistently one of

---

[4] DEA, 2020 NATIONAL DRUG THREAT ASSESSMENT at 30-31 (2020), https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.

the states with the most cocaine-related deaths, year after year.[5] The fact that he continues to be involved in drug dealing, while still on federal supervised release for distribution of crack cocaine within 1,000 feet of a school, demonstrates that a significant sentence is necessary to promote respect for the law and to provide just punishment and deterrence in this case.

Second, the Court should consider that the defendant was armed with a loaded handgun in his waistband, along with approximately 122 grams of crack cocaine in his pants, when he was arrested on June 1, 2021. That arrest came shortly after the defendant agreed to sell the UC approximately 56 grams of crack cocaine and had left his residence to go and meet with the UC. Further, that residence was the subject of a federal search warrant the same day, where a second firearm, numerous rounds of ammunition, large amounts of cocaine, and approximately $16,020 were all located within the defendant's safe. The defendant was not only engaged in drug trafficking, but also possessed dangerous and stolen firearms in furtherance of that drug trafficking. The types of weapons that the defendant had access to, and was willing to possess with his drug stash and on his person, could have brought serious tragedy to himself, his family, and others in his community. Drug trafficking is a risky endeavor, and drug traffickers seek to protect themselves, their drugs, and their proceeds with firearms. The defendant made himself available to an increased potential of violence associated with his behavior.

b. **Characteristics of the Defendant**

The government acknowledges the prompt acceptance of responsibility by this defendant.

---

[5] *Id.* at 31. Massachusetts was one of four U.S. states— along with New Jersey, Ohio, and Pennsylvania—that were among the ten states with the most overall deaths from drug poisoning involving cocaine were also among the ten states with the highest age-adjusted death rates from drug poisoning involving cocaine, per 100,000 population. Those four states collectively accounted for 3,733 deaths, or approximately 25 percent of all deaths from drug poisoning involving cocaine in the United States in 2018. *Id.*

Gaines, however, has several aspects of his background that stand out. First, the defendant has previously engaged in drug dealing, which is relevant to the facts here. *See* 17-cr-10177-ADB Presentence Report. [6] He has now engaged in this same conduct again, while also possessing the firearm in connection with another felony offense, and while still on conditions of federal supervised release for distribution of cocaine base within 1,000 feet of a school.

Second, the government alleges that the defendant is a known associate of the Orchard Park Trailblazers, a street gang in Boston. *See* 2017 PSR ¶ 10, 11. While the defendant previously denied this, the defendant's underlying case, along with BPD Incident Reports and documented encounters with BPD show him to have been a regular presence in and around the Orchard Park Housing Development. Specifically, the defendant had been identified as being in the company with a half-dozen other Orchard Park Trailblazer gang members who were also targets in that large investigation into gun and drug trafficking by Orchard Park gang members in and around that housing development. *Id.* Furthermore, during the course of this investigation, the defendant's continued to enter his exclusion zone, going back to the Orchard Park Housing Development and meeting with known gang members that he was restricted from associating with, in violation of his conditions of federal supervised release. He did this repeatedly, and as recent as within three days of his arrest on June 1, 2021. *See* Docket 17-cr-10177-ADB. As a result, the defendant's criminal conduct here clearly stands squarely at the intersection of guns, drugs, and gangs. The defendant's reoccurring involvement with drugs and now firearms has created a possible incendiary combination.

---

[6] References to the 17-cr-10177-ADB Presentence Report ("2017 PSR") are by paragraph (2017 PSR ¶ __).

### c. Specific and General Deterrence

A significant sentence of imprisonment is warranted to deter others from continuing further criminal conduct while on federal release, and from becoming involved in drug trafficking and illegally possessing firearms, especially in furtherance of drug trafficking. General deterrence must be considered for any individuals similar to the defendant's status, that continuing to commit serious crimes while on supervised release is simply unacceptable. While the defendant has served prison time before, that sentence obviously did not impress upon the defendant the necessity of conforming his conduct to the law. Additionally, the dangers of crossing firearms and drug dealing are difficult to overstate. Individuals tempted to possess danger weapons, in furtherance of drug dealing, must understand that any involvement will have immediate and harsh consequences. Imprisonment is necessary to send a strong warning to others who might consider similar conduct, to show that it is not worth the punishment.

Considerations of specific deterrence also supports the imposition of substantial incarceration. The defendant is no stranger to the danger and problems that his conduct brings. The sentence recommended by the government is hopefully sufficient to deter the defendant from returning to a life of drug dealing and dangerous firearms, and that any continued criminal behavior will be met with serious consequences.

### d. Conditions of Supervised Release

The government requests a term of 36 months of supervised release. In addition to the standard conditions, the government requests that the Court impose the special conditions set forth on his previous federal conviction, including the conditions requiring associational and geographic restrictions, focused on Orchard Park Trailblazer gang associates. *See* Docket 17-cr-10177-ADB.

### III.  THE GOVERNMENT'S RECOMMENDATION

For the foregoing reasons, those contained in the PSR, and those to be presented at the sentencing hearing, the government requests the following sentence:

- a term of 117 months' imprisonment;

- a fine within the Guidelines sentencing range, as calculated by the Court, unless the Court finds that the defendant is not able to pay a fine;

- a term of 36 months' supervised release with the conditions discussed above and recommended by probation; and

- a special assessment of $300.

Respectfully submitted,

JOSHUA S. LEVY
First Assistant United States Attorney

By:   */s/ John T. Dawley, Jr.*
John T. Dawley, Jr.
Assistant U.S. Attorney

Dated: February 8, 2022

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ John T. Dawley, Jr.*
John T. Dawley, Jr.
Assistant U.S. Attorney

Dated: February 8, 2022